FILED – USDC – NDTX – SA
FEB 24 '26 PM 1:26

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

FELIX DAVID VASQUEZ GUZMAN,

    Petitioner,

v.

KRISTI NOEM, et al.,

    Respondents.

No. 1:25-CV-209-H

## ORDER

In *Buenrostro-Mendez v. Bondi*, the Fifth Circuit held that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. ___ F.4th ___, Nos. 25-20496 & 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026). Vasquez Guzman, a native and citizen of Venezuela, is one such alien, having illegally entered the United States over four years ago. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either his release or a bond hearing based on the text of the INA, the Fifth Amendment's Due Process Clause, and the Administrative Procedure Act. Dkt. No. 1.

In light of *Buenrostro-Mendez*, Vasquez Guzman's due process claim is the only remaining non-foreclosed issue. But neither the substantive nor procedural veins of due process afford alien petitioners a bond hearing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Vasquez Guzman are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 1) is denied.

## 1.    Background

In late 2021, Vasquez Guzman illegally crossed into the United States near Hidalgo, Texas. Dkt. No. 1-3 at 1. He was granted Temporary Protected Status from July 31, 2024 until April 2, 2025. Dkt. No. 6 at 7. But last year, DHS Secretary Kristi Noem terminated TPS for Venezuela. *Id.* And although a California district court found this termination unlawful, the Supreme Court stayed that court's decision pending appeal. *Id.* (citing *Noem v. Nat'l TPS All.*, 606 U.S. __, 146 S. Ct. 23 (2025)).

In October 2025, U.S. Immigration and Customs Enforcement (ICE) arrested and detained Vasquez Guzman, and he was served with a Notice to Appear. Dkt. No. 6 at 8. The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 7 at 4; *see* 8 U.S.C. § 1182(a)(6)(A)(i). Currently, Vasquez Guzman is detained at the Bluebonnet Detention Center. Dkt. No. 1 at 1.

Vasquez Guzman did not request bond from an immigration judge. Dkt. No. 6 at 9. He argues that doing so would be futile because of the Board of Immigration Appeals' recent opinion in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025); Dkt. No. 8 at 10–12.

Instead, Vasquez Guzman filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states three claims for relief. First, Vasquez Guzman alleges that his detention without bond violates the INA. *Id.* at 12–13. In Vasquez Guzman's view, the proper

statutory authority for his detention is Section 1226(a), which permits IJs to release aliens on bond while their removal is pending. *Id.* at 12. Second, Vasquez Guzman contends that his detention without bond violates his due process rights. *Id.* at 13–15. Finally, Vasquez Guzman alleges that his detention without bond violates the APA. *Id.* at 15–17.

The Court ordered the respondents to show cause why Vasquez Guzman's petition should not be granted. Dkt. No. 3; *see* 28 U.S.C. § 2243. The Court noted that Vasquez Guzman's petition stated that a motion for a temporary restraining order was forthcoming. Dkt. Nos. 1 at 17; 3 at 1. But no such motion was ever filed. The respondents timely answered (Dkt. Nos. 6–7), and Vasquez Guzman replied (Dkt. No. 8).

While litigation was underway in this case, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 2026 WL 323330, at *1. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 2026 WL 323330, at *4 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

2.    **Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

3.    **Analysis**

As noted above, Vasquez Guzman raises three claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, one based on the Fifth Amendment's Due Process Clause, and another based on the APA. Dkt. No. 1 at 12–17. As explained below, *Buenrostro-Mendez* forecloses Vasquez Guzman's statutory claim and APA claim. Thus, the only claim left for consideration is Vasquez Guzman's due process claim. The Court has considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[1] Even so, the Court considers the arguments raised in

---

[1] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

Vasquez Guzman's briefing to address whether bond-less detention of aliens present in the United States violates the Constitution. The answer is no.

A.      *Buenrostro-Mendez* **forecloses Vasquez Guzman's INA and APA claims.**

Vasquez Guzman is an "applicant for admission" within the meaning of Section 1225(a)(1). Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Petitioner is an "alien." He is "present in the United States." And he "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted"). As an applicant for admission, binding Fifth Circuit precedent requires that he be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 2026 WL 323330, at *1. Thus, Vasquez Guzman's INA claim fails.[2]

Vasquez Guzman's APA claim fails for the same reason. He claims that the "[r]espondents have applied an unlawful, arbitrary interpretation of the [INA] that is inconsistent with [its] plain language . . . and unsupported by reasoned analysis." Dkt. No. 1 at 17. Therefore, the "[r]espondents' refusal to provide" him a bond hearing "constitutes unlawful agency action under the APA, and this Court should grant habeas relief to remedy the violation." *Id.*

The interpretation that Vasquez Guzman asserts is "unlawful" and "arbitrary" is compelled by binding Fifth Circuit precedent. For that reason alone, his claim fails. But Vasquez Guzman runs into deeper trouble when he asks the Court to "grant habeas relief to

---

[2] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.1.

remedy the violation." *Id.* ¶ 32. Section 704 of the APA states, in no uncertain terms, that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." 5 U.S.C. § 704 (emphasis added). Because Vasquez Guzman requests habeas relief as the remedy for his APA claim, he unwittingly admits that there is, in fact, an adequate remedy outside of the APA. Moreover, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas." *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *9 (O'Connor, C.J.) (quoting *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025)); *cf. Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (same, in Section 1983 context). Therefore, the APA does not provide for judicial review of his claim.

### B.    The Due Process Clause does not require the government to give Vasquez Guzman a bond hearing.

Next is Vasquez Guzman's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 at 13–15. Because *Buenrostro-Mendez* did not directly address this question, the Court turns to Vasquez Guzman's arguments. He devotes only a few sentences to this claim, arguing that he has a "fundamental liberty interest" in being free from "physical restraint," and that his detention without a bond redetermination hearing to determine whether he is a flight risk or danger to others "deprives him of procedural protections guaranteed by the Due Process Clause." *Id.* at 14. His claim implicitly invokes both substantive and procedural due process. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and

tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).  While still recognizing due-process rights for aliens present in the United States, *see, e.g., J.G.G.*, 604 U.S. at 673, the Supreme Court has long affirmed the constitutionality of executive immigration procedures.  The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.  Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better.  As an "applicant for admission," Vasquez Guzman has "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam v. Dep't of Homeland Sec.*, 591 U.S. 103, 140 (2020); *see Landon v.*

*Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Vasquez Guzman is not entitled to a bond hearing as a matter of procedural due process.

**4.    Conclusion**

In short, Vasquez Guzman, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 2026 WL 323330, at *1. Thus, even if review were available, his APA claim would fail for the same reason. And the Due Process Clause does not require a bond hearing in these circumstances. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on February 24, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE